38067/01245/MHW/JFM

U.S. DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOHNNY HASKINS,<br><br>    Plaintiff,<br><br>v.<br><br>DANIEL SUMULONG, et al.,<br><br>    Defendants. | No. 13 cv 8392<br><br>Judge James B. Zagel |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR FED. R. CIV. P. 56 MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, KATHLEEN SANCHEZ, L.P.N., LOUISE PEACH, R.N., LAUREL MAKULA, R.N., and DANIEL SUMULONG, R.N., by and through their attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for their Memorandum of Law in Support of Their Fed. R. Civ. P. 56 Motion for Summary Judgment, state as follows:

### I.  INTRODUCTION

Plaintiff, JOHNNY HASKINS (the "Plaintiff"), was an inmate in the custody of the Illinois Department of Corrections ("IDOC") and Kane County Jail.  *See* Defendants' Rule 56.1 Statement of Undisputed Facts ("SOF"), ¶ 1.  He was released on May 12, 2014, following his incarceration for convictions on aggravated criminal sexual abuse and aggravated criminal sexual abuse with a victim aged 13-16.  *Id.*  On November 20, 2013, the Plaintiff filed his *pro se* civil rights lawsuit in this Court, pursuant to 42 U.S.C. § 1983, against Defendants Nurse KATHLEEN SANCHEZ, Nurse LOUISE PEACH, Nurse LAUREL MAKULA, and Nurse DANIEL SUMULONG. (collectively, the "Nurses").  *See* Complaint at Law, Document #1.  The Plaintiff alleges that Nurse Sumulong refused to close his small head laceration with stitches after the Plaintiff sustained an

injury when his cellmate struck him in the head with a closed fist. *Id.* Against Nurses Sanchez, Peach, and Makula, the Plaintiff alleges that, "all witnessed this yet turned a blind eye to this total lack of compassion and negligent attitude." *Id.* Plaintiff alleges that he was not provided pain medication, he sustained a concussion, and he now suffers from migraines and headaches. *Id.*

The uncontroverted material facts establish that on January 24, 2012, the Nurses responded to a call for medical assistance following an inmate altercation within four (4) minutes of receiving a call for medical assistance. SOF at ¶ 12. The Nurses cleaned the Plaintiff's small head laceration, applied gauze to stop bleeding, provided antibiotic ointment, antibiotic pills, and a tetanus booster. SOF at ¶ 13. The Nurses and the on-call doctor did not believe that his wound required stitches to heal. SOF at ¶ 13, 14. On the on-call doctor's next on-site visit, he examined the Plaintiff and gave him pain prescription pain medication. SOF at ¶ 18. No medical records <u>ever</u> reference, anywhere, that the Plaintiff sustained a concussion, or that his altercation caused him to experience headaches or migraines. SOF at ¶ 18, 46, 47. All of the Nurses acted in good faith, in performance of their official duties, and their care and treatment of this Plaintiff complied with the applicable professional standards of care. SOF at ¶ 52-53.

Construing all uncontroverted material facts in the light most favorable to the Plaintiff, his claim for deliberate indifference against these Nurses fails as a matter of law, and this Honorable Court should enter an Order granting Summary Judgment in favor of Defendants Sanchez, Peach, Makula, and Sumulong, and against the Plaintiff.

## **II. MATERIAL FACTS**

The Nurses incorporate, herein, their Statement of Material Facts Pursuant to Local Rule 56.1(a), and accompanying exhibits, filed concurrently with their Motion and Memorandum of Law.

### III. ARGUMENT

  A. **Venue and Jurisdiction are proper**

  This Court has jurisdiction over this matter as it concerns a claim under § 1983. (Doc. #1). Additionally, the events giving rise to this incident occurred at the Kane County Jail in Kane County, Illinois, which is seated in the Northern District of Illinois. SOF at ¶ 9.

  B. **Summary Judgment is proper in this matter**

  Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A party opposing summary judgment must do more than identify "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (footnote omitted). "A party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. at 380-81 (holding that the "[r]espondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should have not relied on such visible fiction …").

**C.** **Plaintiff Has Not Exhausted His Administrative Remedies Against The Defendants**

Plaintiff's claim must be dismissed because he has not demonstrated that his administrative remedies have been fully and properly exhausted. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Prisoners must exhaust their administrative remedies before they file suit in court. *42 U.S.C. § 1997(e)(a)*; *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The exhaustion requirement applies to deliberate indifference claims. *Porter* 534 U.S. at 532.

The Plaintiff's claim originates from Kane County Jail and he is bound by Kane County Jail's protocol for handling internal grievances. In *Terrell v. Carter*, this Court had occasion to review Kane County Jail's grievance procedures, in 2012, as set forth in the Kane County Jail Detainee Handbook. All grievances must be filed within forty-eight (48) hours of the alleged offense. *Terrell v. Carter*, 2014 U.S. Dist. LEXIS 162446, *16-17. Receipt of a grievance must be acknowledged within fifteen (15) days. *Id.* All findings and actions taken to correct the alleged violation must be submitted to the detainee in writing. *Id.* Detainees receive one level of appeal, which must be submitted within forty-eight (48) hours of a final decision on the grievance. *Id.* The appeal is forwarded to the Commissioner of Corrections. *Id.*

Here, Plaintiff failed to timely file the grievances within the required forty-eight (48) hours after the incident. SOF at ¶ 54. His first grievance for medical treatment after his January 24, 2012 altercation was filed on February 1, 2012. SOF at ¶ 54. On February 16, 2012, the grievance officer responded and advised the Plaintiff to contact the medical staff regarding any lingering pain. SOF at ¶ 54. He never appealed this ruling. His second grievance related to medical care is dated "multiple dates". SOF at ¶ 54. The grievance officer responded on February 21, 2012 and advised that his complaints were forwarded to the medical staff. SOF at ¶ 54. Again, he never appealed this ruling. SOF at ¶ 54. During the same time period, the

4

Plaintiff filed three other grievances that made no mention of his laceration, pain, headaches, or a possible concussion. SOF at ¶ 54. By failing to timely file and failing to appeal, the Plaintiff has not exhausted his administrative remedies. Accordingly, his Complaint should be dismissed.

### D.     Plaintiff Has Not Established the Elements of Deliberate Indifference

  1.     *Plaintiff must establish all three elements of deliberate indifference to prevail*

The uncontroverted factual record establishes that Plaintiff has failed to create any issue of material fact to defeat the Nurses' Motion for Summary Judgment. In order to prevail on a § 1983 claim, the Plaintiff must show that Nurses Sanchez, Peach, Makula, and Sumulong acted with deliberate indifference to his serious medical need or condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Hernandez v. Tex Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004). The burden of proving deliberate indifference rests on the Plaintiff. *Id.*

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir, 1996). The test of deliberate indifference is a significantly high burden for a plaintiff to overcome and the burden is on the prisoner to demonstrate deliberate indifference to a serious medical need or condition. *Roe,* 631 F.3d at 857; *Hernandez,* 380 F.3d at 882. Plaintiff has failed to establish all three elements.

  2.     *Plaintiff has not established the first element: an objectively serious medical need*

In order to defeat this Motion, Plaintiff must first prove the existence of an objective, serious medical need. *Estelle,* 429 U.S. at 107; *Sellers,* 41 F.3d at 1102; *Vance,* 97 F.3d at 991.

A serious medical need is an objective, life-threatening situation, or a risk of needless pain or lingering disability that went untreated, which would have been so obvious that even a lay person would perceive the need for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005); *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991). Furthermore, in order to establish that he has a serious medical condition, a plaintiff must present evidence that indicates said condition has risen to a level that posed a threat of serious harm to his present health or to his future health. *Stevenson v. Scholz*, 2009 WL 790961, 2009 U.S. Dist. LEXIS 22945 at *23 (C.D. Ill. 2009).

Here the Plaintiff alleges: (1) a 1-inch long by 1-millimeter deep laceration to his head that he alleges required stitches; (2) pain and headaches; and (3) an undiagnosed concussion. Regarding the laceration, the Seventh Circuit has held that a 1-inch long shallow laceration to a prisoner's temple is not a serious medical condition. *See Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991) (finding that a temple laceration 1-inch long and shallow was not a serious medical need unless that person was a hemophiliac). The Plaintiff's laceration was 1-inch long by 1-mm deep. SOF at ¶ 13. Accordingly, the laceration was not an objectively serious medical need.

Regarding the pain and headaches, Seventh Circuit case law regarding pain as an objectively serious medical condition requires that the pain be accompanied by other objective indicia. *See Reed v. McBride,* 178 F.3d 849, 853 (7th Cir. 1999) (complaints of pain accompanied by internal bleeding, violent cramps, and periods of unconsciousness); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1370 (7th Cir. 1997) (pain complaints were objectively serious when it was manifestly clear that an untreated infected cyst caused "excruciating pain" sometimes accompanied by fever); *Heidel v. Orleans Parish Prison,* 2014 U.S. Dist. LEXIS 55725, *16 (E.D. La. Mar. 26, 2014) (finding no serious medical need when an inmate

complained of injuries of headaches and a head contusion after another inmate slammed his head to the floor).

Here, the Plaintiff had minor bleeding on the date of his altercation which resolved via the immediate medical treatment rendered by the Nurses. SOF at ¶ 13-14. His first complaint of pain is recorded four days after the altercation during a visit with Dr. Sood on January 28, 2012. SOF at ¶ 18. The pain report is unaccompanied by any other objective indicia. *Id.* Nor are any objective indicia noted to accompany his pain during any subsequent medical visit from January 28, 2012 through his final medical examination at Kane County Jail on August 23, 2012. SOF at ¶ 18- 37. Accordingly, his general complaints of pain and headaches do not rise to the level of a serious medical condition.

The Defendants do not contend that a concussion is not an objectively serious medical need. However, no medical record or testimony, besides the Plaintiff's unfounded, self-serving lay opinion, confirms that he actually sustained a concussion.

3. *Plaintiff has not established the second element: subjective knowledge*

Assuming, *arguendo*, that Plaintiff's laceration, pain and headaches, and possibility of concussion constituted a serious medical need, he has failed to establish the second element of his deliberate indifference claim - that each Nurse was subjectively aware of his serious medical needs. In order to establish subjective knowledge, the Plaintiff must show that, "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety'". *Vance*, 97 F.3d at 993, *citing Farmer*, 511 U.S. at 837.

Here, there are four Nurse Defendants. The Plaintiff confirmed that he does not recall each specific nurse or what each nurse's role was in this matter. SOF at ¶ 8. Each Defendant

Nurse testified that it is his or her custom and practice to document all of a patient's subjective complaints and objective findings in their medical progress notes. SOF at ¶ 37. Nurse Sanchez authored the only medical notes on January 24, 2012, the date of the altercation. Her notes make no mention of any complaints of pain, headaches, dizziness, or confusion. SOF at ¶ 13, 14. Accordingly, the undisputed facts allow this Court to find that no Nurse possessed subjective knowledge of any complaints of pain, headaches, or concussion indicators like dizziness or confusion on January 24, 2012.

    Regarding subsequent treatment, Nurse Sanchez never authored another medical note in this matter, and the Plaintiff cannot place her at any other medical appointments. SOF at ¶ 8. Nurse Sumulong authored only one note, on June 4, 2012, that was related to the Plaintiff's vital signs during a voluntary religious hunger fast. SOF at ¶ 31. Likewise, Nurse Makula only authored one note, on June 5, 2012, again, related to the Plaintiff's vital signs during a voluntary hunger fast. SOF at ¶ 33. The undisputed evidence establishes that after January 24, 2012, Nurses Sanchez, Sumulong, and Makula possessed no subjective knowledge of any of the medical issues complained of in the present litigation.

    Nurse Peach authored only one medical note, on February 10, 2012. SOF at ¶ 22. The note records that the Plaintiff complained of right side pain, a headache, and that his pupils were equal and reactive. SOF at ¶ 22. All Defendant Nurses testified that equal and reactive pupils indicate that a patient does not have a concussion. SOF at ¶ 23. At best, this note notifies Nurse Sanchez that the Plaintiff alleged right side pain and a headache. However, the question before this Court is not whether the Plaintiff made any complaint of pain, but whether the Plaintiff made a complaint of pain that in its content and manner sufficiently alerted Nurse Peach to an excessive risk to the Plaintiff's health. As noted, complaints of pain without other indicia, do not

establish a serious medical need or excessive risk to health. *See e.g., Reed,* 178 F.3d at 853. Under this standard, a general complaint of a headache and pain, alone, does not provide Nurse Peach with subjective notice of an excessive risk to the Plaintiff's health.

    4.    *Plaintiff has not established the third element: culpability*

Plaintiff has not established that any of the Nurses acted with the required culpability, or deliberate indifference, to his serious medical needs. The Plaintiff must establish that each Nurse actually knew that he needed treatment for a serious medical need but nevertheless *purposely* and *deliberately* withheld it. *Sellers*, 41 F.3d at 1102 (emphasis added). Deliberate indifference "is merely a synonym for intentional or criminally reckless conduct." *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen,* 780 F.2d 645, 652-53 (7th Cir. 1985). Deliberate indifference constitutes unnecessary and wanton infliction of pain, "repugnant to the conscience of mankind," or which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness." *Estelle* at 106-07.

Plaintiff has a very high burden to meet in order to satisfy this third element because negligence, gross negligence, or even tortuous recklessness is not enough. *Estelle* at 106-07. Unsuccessful medical treatment, neglect, or medical malpractice is not sufficient. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

The Nurses did not exhibit the required culpability for two reasons: (i) The Nurses complied with all community standards of care and (ii) the Plaintiff lacks any evidence that his alleged injuries resulted from the Nurses' alleged actions or inactions.

    i.    <u>*Plaintiff has not shown that Nurse's treatment of his alleged medical condition substantially departed from community standards*</u>

In order to infer the required culpability for a claim of deliberate indifference based on the care rendered by a medical professional, the professional's decision must be so far afield of

9

accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997).

First, the Nurses were not even vested with the power to order several of the medical treatments that Plaintiff wanted. Next, the Plaintiff alleges that the Nurses knew of his complaints of pain and denied him pain medication. While denial of prescribed pain medication can constitute a violation of constitutional rights, Plaintiff's claim against the Nurses is improper because nurses at Kane County Jail in 2012 could not prescribe or provide this Plaintiff with pain medication. SOF at ¶ 42-45. Nor could Nurses order that a prisoner receive stitches to close a severe laceration. SOF at ¶ 39; *see Thomas v. Clay*, 2010 U.S. Dist. LEXIS 51999, 2010 WL 213663 *14-15, (N.D. Ill. May 25, 2010), *aff'd* 411 Fed Appx. 908 (7th Cir. 2011) (finding that a prisoner's claims for deliberate indifference against nurses for failing to provide ice packs and Ben Gay failed because the nurses could not prescribe the ice packs without a doctor's order and the nurse's did not carry Ben Gay, so there was none to withhold).

Second, the undisputed material facts show that the Nurses complied with all applicable professional standards of care. Regarding treatment of a prisoner's head laceration, the standard of care required a nurse to assess for the possibility of stitches by evaluating a wound's length and depth and the amount of blood discharged from the wound. SOF at ¶ 39. The chief criterion for ordering stitches is that the laceration was so deep or bleeding so profusely that the wound would not close or heal on its own, absent stitches. SOF at ¶ 39.

Here, each nurse testified that the Plaintiff sustained a 1-inch long by 1-mm deep laceration with no excessive bleeding charted in his medical records. SOF at ¶ 40. Each nurse termed this a "small" wound that did not require stitches. SOF at ¶ 40. Rather, the appropriate standard of care required a nurse to clean the wound, apply antibiotic ointment, and apply gauze

with pressure to stop the bleeding. SOF at ¶ 41. They then gave the Plaintiff an antibiotic pill and tetanus shot to further rule out the possibility of infection. The Nurses confirmed that the medical records record that the Nurses cleaned the Plaintiff's wound, applied triple antibiotic ointment, and used 4x4 gauze with pressure to stop the bleeding. SOF at ¶ 41. Each Nurse has offered testimony that all Nurses complied with the appropriate professional standard of care in treating the Plaintiff's small head laceration. SOF at ¶ 41. The Plaintiff offered no testimony contradicting these statements. Thus, this Court may take it as an undisputed fact that the Nurses complied with the applicable standards of care in treating the Plaintiff's laceration.

Regarding a prisoner's complaints of pain or headaches, a nurse would instruct a prisoner to put in for M.D. Sick Call to see a doctor. SOF at ¶ 42. While a nurse could give a one-time dosage of ibuprofen, nurses were forbidden to do so if a prisoner had an existing pain medication order from a doctor. SOF at ¶ 43. Here, Dr. Sood saw the patient during his first visit to the jail after the Plaintiff's altercation and prescribed him with the pain medication Naprosyn. SOF at ¶ 45. The Plaintiff complained of pain to Nurse Peach on February 10, 2012, and Dr. Sood saw the Plaintiff on his next day at the jail, February 12, 2012, and again prescribed him Naprosyn for pain. SOF at ¶ 22, 25. On February 15th, the Plaintiff admitted he refused to take his pain medication because of a financial dispute. SOF at ¶ 26. The Nurses all testified that they complied with the professional standards of care regarding pain medication. SOF at ¶ 53. The Plaintiff has offered no testimony contradicting this statement. This Court may take it as undisputed fact that the Nurses complied with all applicable standards of care in treating the Plaintiff's complaints of pain and headaches.

Regarding the Plaintiff's concussion allegation, the Nurses testified that a nurse reviewing a patient for signs of a concussion looks for the presence of multiple of the following symptoms:

11

loss of consciousness, dilated pupils, and whether or not a patient is oriented to his name, location, and date, called "alert and oriented x 3". SOF at ¶ 48. Here, the Plaintiff never manifested a multitude of these symptoms. He never lost consciousness following this incident, and was alert and oriented enough that he immediately completed a computer kiosk request to see a physician during the doctor's next scheduled visit. SOF at ¶ 49. On February 10, 2012, the Plaintiff was found with pupils equal and reactive to light. SOF at ¶ 49. He was assessed as alert and oriented to at least "x 3" on February 19, February 28, June 4, and June 5, 2012. SOF at ¶ 49. The Nurses reviewed the records and testified that the Plaintiff did not present with symptoms suggesting a concussion. SOF at ¶ 49. The Plaintiff has offered no testimony contradicting this statement. This Court may take it as undisputed fact that the Nurses complied with all applicable standards of care in treating the Plaintiff's alleged concussion.

At best, Plaintiff's claim amounts to medical negligence - that the Nurses deviated from the community standards of care and should have applied stitches instead of using gauze and pressure, or should have given ibuprofen instead of Naprosyn, or should have recognized his presentation on January 24th and thereafter to suggest a possible concussion. However, a medical professional is afforded deference to her medical judgments and treatment decisions unless the plaintiff can show that *no* minimally competent medical professional would have responded in that way when faced with the same circumstances. *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008) (emphasis added). Moreover, unsuccessful medical treatment, neglect, or medical malpractice is not deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Again, the Plaintiff has offered zero medical testimony showing what a minimally competent medical professional would do in each situation when faced with the exact same circumstances. Accordingly, Plaintiff's deliberate indifference claim fails.

> ii. *Plaintiff provided no verifying medical evidence supporting his claims*

The Plaintiff has not shown that the Nurses alleged actions or inactions regarding his January 24th altercation caused or contributed to his injuries. Plaintiff is required to establish a causal connection between the Nurses' actions and the alleged harm. *Memphis Comm. School. Dist. v. Stachura*, 477 U.S. 299, 305-08 (1986). Because this case involves medical issues, the Plaintiff must secure expert testimony to prove that causal connection. *Alberson v. Norris*, 458 F.3d 765-66 (8th Cir. 2006). Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 1999).

Plaintiff has provided no verifying medical evidence that the Nurses' course of conduct departed from professionally accepted standards or caused his injuries. He actually testified that no doctor has ever told him that his headaches resulted from the January 24th altercation.

> Q: The question that I want to know, the question I want an answer to is if a doctor has specifically told you that the reason you have migraines is due to the January 24, 2012 incident?
>
> A: Oh, no, I can't say that they--no. No I can't say that. SOF at ¶ 46.

His primary care physician, Dr. Carl Vancol, of Roseland Hospital, an institution unaffiliated with any of the Defendants, also told him that the headaches are not related:

> Q: Has Dr. Vancol told you that the reason you have these headaches and migraines is because of the incident on January 24, 2012?
>
> A: No, he's not saying that, but he is aware that I was hit…. SOF at ¶ 47.

Regarding his allegations that he sustained a, still undiagnosed, concussion, the Plaintiff testified that Dr. Sood, allegedly, told him that he had a concussion, and then refused to check him out for further symptoms, as requested by the Plaintiff. SOF at ¶ 50. He never alleged that a nurse told him that he has a concussion.

13

Finally, the Plaintiff complains of headaches and pain following his altercation; however, he voluntarily undertook a regimen of hunger fasting for religious reasons in February and June of 2012. SOF at ¶ 51. All Nurses testified that fasting can lead to dehydration or hunger which can cause or exacerbate underlying conditions including headaches, confusion, or a feeling of "light-headedness". SOF at ¶ 51. Plaintiff has offered no medical testimony that his voluntary hunger fasting did not cause or contribute to several of the injuries complained of in his Complaint. Accordingly, this Court may take it as undisputed fact that there is no medical testimony that the Nurses' actions caused or contributed to the Plaintiff's alleged injuries.

### E.  The Plaintiff cannot prove personal involvement by the Nurses

Plaintiff has not shown personal involvement by each of the four Defendant Nurses. Liability under § 1983 requires direct and personal involvement in the situation that causes injury to an inmate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To be liable under Section 1983, the individual defendant must have caused or participated in a constitutional deprivation. *Id.* The burden is on the Plaintiff to establish personal involvement through pleadings and evidence. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989).

The Plaintiff confirmed that he does not recall each specific nurse or what each nurse's role was in this matter. SOF at ¶ 8. Nurse Sanchez only authored notes on the date of the altercation, and she notified and handed off the case to Dr. Sood. SOF at ¶ 13, 14 18. Similarly, Nurse Peach authored only one medical note and then notified Dr. Sood, who took over the Plaintiff's care and treatment during his next scheduled visit. SOF at ¶ 22, 25. Nurses Sumulong and Makula only authored notes related to the Plaintiff's vital signs during an unrealted voluntary religious hunger fast. SOF at ¶ 31, 33. Accordingly, the Plaintiff cannot prove personal involvement as to these four Nurses.

14

**F.     These Defendants are entitled to qualified immunity**

Finally, the Nurses are entitled to qualified immunity. Qualified immunity shields officials from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005). To defeat qualified immunity, a plaintiff must show that the "violation was so clear that an official would realize he or she was violating an inmate's constitutional rights". *Borrello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006). Here, there is no basis for a jury to find that the Nurses realized that they were committing such a violation. Each Nurse testified that he or she acted in good faith in performance of his or her official duties and operated to the best of his or her abilities. SOF at ¶ 52. Plaintiff offers no testimony to rebut this statement. Thus, the Nurses are shielded from civil liability by the doctrine of qualified immunity.

## CONCLUSION

This Court should grant summary judgment in favor of the Nurses and against the Plaintiff. First, the Plaintiff has not exhausted his administrative remedies. Second, the Plaintiff's claims of deliberate indifference fail because he did not suffer from a serious medical condition and he has not offered any testimony medically verifying, or otherwise, showing that the Nurses exhibited the required culpability by knowing of his condition and then knowingly, and grossly, departing from accepted professional standards of care.

WHEREFORE, Defendants, KATHLEEN SANCHEZ, L.P.N., LOUISE PEACH, R.N., LAUREL MAKULA, R.N., and DANIEL SUMULONG, R.N., respectfully request that this Honorable Court enter an Order granting Summary Judgment in their favor, dismissing this suit with prejudice, and granting any and all other relief that this Court deems just.

        Respectfully submitted,

        CASSIDAY SCHADE LLP


        By: <u>/s/ James F. Maruna</u>
        One of the Attorneys for Defendant, KATHLEEN SANCHEZ, L.P.N. LOUISE PEACH, R.N., LAUREL MAKULA, R.N., and DANIEL SUMULONG, R.N.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

16